UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDDIE BILLS, JR.,

    Plaintiff,

v.

SHERYL GONZALEZ, et al.,

    Defendants.

_____/

Case No. 25-10676
Hon. Jonathan J.C. Grey
Magistrate Judge Patricia T. Morris

**ORDER ADOPTING REPORT AND RECOMMENDATION (ECF No. 27) AND DENYING AMENDED MOTION FOR IMMEDIATE CONSIDERATION OF MOTION FOR INJUNCTIVE RELIEF (ECF No. 48)**

## I. INTRODUCTION

On March 11, 2025, pro se Plaintiff Freddie Bills, Jr., incarcerated at the G. Robert Cotton Correctional Facility in Jackson, Michigan, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) In the complaint, he alleges that former Defendant Paul Corcoran, a doctor employed by Henry Ford Hospital in Jackson, Michigan, substituted a previously ordered angiogram procedure for the ankle-brachial index (ABI) procedure and treadmill test, (*id.* at PageID.5), which "leaves [him] with continuous leg pain[,] subjects him to higher risks of tissue damages

and leg amputation[, and] subjects [him] . . . to increased risks of stroke and heart attack."[1] (*Id.* at PageID.7.) He also alleges that Defendant Sheryl Gonzalez, a nurse practitioner employed by the Michigan Department of Corrections ("MDOC") and Defendant Stephen McAnally, a registered nurse employed by the MDOC: (1) never examined Bills' legs, (2) refused to order an angiogram to be performed on him, and (3) adopted Dr. Cocoran's recommendation against the MDOC-approved angiogram procedure, (*id.* at PageID.7–8), further contributing to his chronic leg pain and increased risk of severe medical conditions. (*Id.*)

Bills' complaint, in part, seeks, "[a]n injunction that plaintiff shall receive the MDOC approved angiogram diagnostic procedure." (ECF No. 1, PageID.9.) On June 13, 2025, Bills requested that the Court immediately consider his request for injunctive relief. (ECF No. 18.)

This matter comes before the Court on Magistrate Judge Patricia Morris' Report and Recommendation dated August 14, 2025 (the "R&R"). (ECF No. 27.) In the R&R, Magistrate Judge Morris' recommends that the Court deny Bills' motion for immediate consideration for injunctive

---

[1] Dr. Cocoran was dismissed from this action during review pursuant to 28 U.S.C. § 1915(e)(2)(B) because Bills failed to allege or show that Dr. Cocoran was acting under the color of state law. (ECF No. 9, PageID.290–292.)

relief (ECF No. 18), finding that all four factors used to evaluate a motion for a temporary restraining order ("TRO") and a motion for a preliminary injunction weigh against issuing Bills' requested injunction. (ECF No. 27.) Bills filed objections to the R&R.[2] (ECF Nos. 35, 39[3].) Defendant McAnally responded to Bills' Objection No. 2.[4] (ECF No. 41.)

For the reasons stated below, the Court **ADOPTS** the R&R as to the findings of facts, conclusions of law, and denial of Bills' motion for immediate consideration for injunctive relief. (ECF No. 27.) Moreover, for the same reasons the Court adopts the R&R, the Court **DENIES** Bills'

---

[2] Bills styles Objection No. 1 (ECF No. 35) as one objection with two arguments. The Court treats the two arguments as separate objections and addresses them as such. Moreover, the Court does not consider Bills' Objection No. 2 (ECF Nos. 39, 45) because it was filed well beyond the deadline. *See* Fed. R. Civ. P. 72(b)(2) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."); *see also* E.D. Mich. LR 72.1(d). The Court granted Bills' motion for enlargement of time within which to file objections and extended the deadline to October 1, 2025. (ECF No. 32.) However, Bills' Objection No. 2 at ECF No. 39 was filed on December 2, 2025 and includes no explanation as to why it was untimely filed. In any event, Bills' Objection No. 2 does not change this Court's analysis and conclusion in this order, and the Court finds no justification for Bills' request to strike defendant's response to the motion for immediate consideration for injunctive relief and to sanction Attorney Nicole Hughes.

[3] ECF No. 39 and ECF No. 45 are duplicative documents. Thus, the Court only cites ECF No. 39 when referencing Bills' Objection No.2.

[4] Since the Court does not consider Bills' Objection No. 2 (ECF No. 39), *see supra* note 2, it also does not address McAnally's response to Bills' Objection No. 2. (ECF No. 41.) Thus, Bills' motion for enlargement of time (ECF No. 53) is **DENIED AS MOOT** only to the extent that Bills requests additional time to reply to McAnally's response to Bills' Objection No. 2.

3

recently filed amended motion for immediate consideration of motion for injunctive relief. (ECF No. 48.)

## II. LEGAL STANDARD

The Court must review de novo any portion of an R&R to which a specific objection has been made. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011).

Four factors must be balanced and considered before a court may issue a TRO or preliminary injunction: (1) the likelihood of the plaintiff's success on the merits; (2) whether plaintiff will suffer irreparable injury without the injunction; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest will be advanced by issuing the injunction. *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009) (citation omitted). "[T]he four factors are not prerequisites to be met, but rather must be balanced as part of a decision to grant or deny injunctive relief." *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir. 1995) (citation omitted); *see also S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017). In making its determination, a "district court is required to make specific findings concerning each of the four

factors, unless fewer factors are dispositive of the issue." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997).

"The party seeking the preliminary injunction bears the burden of justifying such relief," and "'the proof required . . . to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion' because a preliminary injunction is an extraordinary remedy." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) (citing *Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 423, 441 (1974)) (quoting *Leary v. Daeschner,* 228 F.3d 729, 739 (6th Cir. 2000)).

### III. ANALYSIS

#### A. First Objection

Bills' first objection alleges that Dr. Cocoran failed to respond to an interrogatory asking him to "disclose the authority upon which [he] provided medical care to Plaintiff[.] For example, is that authorization a contract with the MDOC/State of Michigan?" (ECF No. 35, PageID.434.) Bills argues that Dr. Cocoran's failure to answer or object to the interrogatory serves as an admission to being a state actor under the Federal Rules of Civil Procedure.

5

Whether or not Dr. Cocoran is a state actor, however, has no bearing on the R&R's analysis and conclusion that Bills is not entitled to a TRO or preliminary injunction. Bills' first objection therefore is irrelevant to the R&R.

Moreover, if Bills would like the Court to reinstate Dr. Cocoran, he must properly raise the issue before the Court. After Dr. Cocoran was dismissed from this action (ECF No. 9), Bills filed a motion to reinstate Dr. Cocoran (ECF No. 23), which was subsequently stricken due to illegibility. (ECF No. 26.) The Court's order striking Bills' motion directed him to refile in accordance with Local Rule 5.1(a)(2). (*Id.*) Since then, the Court has not received a refiled motion to reinstate Dr. Cocoran. The Court previously directed Bills to refile that motion if he wanted the Court to consider it. (ECF No. 26.) If Bills does so, the Court may then consider Bills' argument and any relevant evidence that Dr. Cocoran does have a contractual relationship with the State of Michigan such that he was acting under the color of state law.

Accordingly, the Court **DENIES** Bills' first objection.

### B.  Second Objection

Bills' second objection contends that Dr. Cocoran's substitution of an MDOC-ordered angiogram diagnostic procedure for the ABI procedure and treadmill test amounts to deliberate indifference because Dr. Cocoran "had a mandatory duty to adhere to that [MDOC] order." (ECF No. 35, PageID.434 (citing *Boretti v. Wiscomb*, 930 F.2d 1150 (6th Cir. 1991); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700 (11th Cir. 1985)[5]; *LeMarbe v. Wisneski*, 266 F.3d 429 (6th Cir. 2001).) This objection relates to the first factor courts consider when determining whether to issue a TRO or preliminary injunction—the likelihood of success on the merits—and the Court finds this objection without merit.

"The Eighth Amendment is violated when an official is deliberately indifferent to the serious medical needs of a prisoner in their care." *Jones v. Cnty. of Kent*, 601 F. Supp. 3d 221, 243 (W.D. Mich. 2022) (citations omitted). The "deliberate-indifference test has objective and subjective parts." *Phillips v. Tangilag*, 14 F.4th 524, 534 (6th Cir. 2021) (citation omitted). "To satisfy the objective component, the plaintiff must establish

---

[5] Bills cites *In Anacata v. Prison Health Services, Inc.*, 759 F. 700 (2001). The Court is unable to locate such a case and believes Bills intended to cite *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700 (11th Cir. 1985).

7

that the medical need at issue is sufficiently serious." *Jones*, 601 F. Supp. 3d at 243 (citation omitted). "A serious medical need alone can satisfy this objective element if doctors effectively provide no care for it." *Phillips*, 14 F.4th at 534 (citation omitted). However, "[m]ore frequently, doctors provide some care and prisoners challenge their treatment choices as inadequate. To establish the objective element in this common situation, prisoners must show more." *Id.* at 534–535 (citations omitted). In these cases, "care qualifies as cruel and unusual only if it is so grossly incompetent or so grossly inadequate as to shock the conscience or be intolerable to fundamental fairness." *Id.* at 535 (internal quotation marks and citations omitted). "Only if a prisoner proves [the] objective element must courts consider the second (subjective) part of the deliberate-indifference test." *Id.* at 535.

Under the legal standard set forth in *Phillips*, the Court finds that Bills is not likely to succeed on the merits of his deliberate indifference claim. After examining Bills on May 10, 2024, Dr. Cocoran provided the following assessment:

> This patient has probable lower extremity claudication symptoms based on his description. He has a normal physical examination. His ABIs as of March 28th were normal.

8

> I believe this facility ordered a CT angiogram with lower extremity runoff **which I would not recommend and is not necessary**. I had recommend[ed] a Doppler with exercise. If he has a change in his ankle-brachial indices with exercise I would consider angiography with repeat angioplasty and possible stenting. Given his normal physical exam and normal ABIs the Doppler with exercise will provide objective evidence that there is a hemodynamically significant stenosis. We will see him back with the Doppler with exercise and will discuss results.

(ECF No. 19-1, PageID.350 (emphasis added).) In other words, Dr. Cocoran examined Bills and disagreed with the MDOC doctor who approved an angiogram procedure. This amounts to a difference in medical opinion, and "[j]ust as a plaintiff's disagreement with a prison doctor's chosen course of treatment does not establish deliberate indifference, '[a] difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs.'" *Yowell v. Booker*, No. 12-cv-10029, 2013 WL 4417417, at *6 (E.D. Mich. Aug. 15, 2013) (citations omitted).

To the extent Bills argues that Dr. Cocoran's treatment was inadequate or delayed, Bills must submit "verifying medical evidence to establish 'the detrimental effect of the delay in medical treatment.'" *Anthony v. Swanson*, 701 F. App'x 460, 463 (6th Cir. 2017) (quoting

9

*Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)); *see also Phillips*, 14 F.4th at 536 (When a plaintiff challenges the adequacy of care provided, he must present "expert medical evidence showing that he received grossly inadequate care."); *Rhinehart v. Scutt*, 894 F.3d 721, 741 (6th Cir. 2018) (internal quotation marks and citation omitted) ("Allegations that more should have been done by way of diagnosis and treatment and suggest[ions] of other options that were not pursued raise at most a claim of medical malpractice, not a cognizable Eighth Amendment claim.").

As the R&R notes, Bills has not submitted any verifying medical evidence in support of his motion that shows the medical necessity for an angiogram. On the other hand, defendants provided medical records that indicate that Bills was assessed multiple times, referred to a specialist in vascular medicine, and scheduled for follow-up appointments to monitor the results of examination. (ECF No. 19-1.) Upon follow-up, Dr. Cocoran did not find Bills' symptoms to be "vascular in nature given the fact that he completed the treadmill study and an incline without provocation of symptoms and no change in his ankle index." (*Id.* at PageID.355.) Without the submission of evidence that shows the medical necessity of

10

the angiogram, "this Court lacks the requisite medical expertise to properly evaluate whether [Bills'] claim has merit." *Anthony*, 701 F. App'x at 464; *see also Worthy v. Michigan Dep't of Corr.*, No. CV 18-12451, 2020 WL 1818039, at **3–4 (E.D. Mich. Jan. 24, 2020), *report and recommendation adopted sub nom. Worthy v. Corizon Med. Grp.*, No. 18-12451, 2020 WL 881146 (E.D. Mich. Feb. 24, 2020) (holding that the absence of evidence that surgery was medically necessary, or that the conservative treatment plaintiff received was detrimental, is fatal to the plaintiff's Eighth Amendment claim).

Bills' reliance on *Boretti v. Wiscomb*, 930 F.2d 1150 is unavailing. There, the Sixth Circuit found deliberate indifference to serious medical needs when the defendant failed to carry out a medical plan that required daily wound dressing and refused to give plaintiff his pain medication. *Id.* at 1154. The court was clear—"the unnecessary suffering which results from a denial of medical care is inconsistent with contemporary standards of decency." *Id.* at 1155 (citation omitted). In the present case, however, Dr. Cocoran did not *deny* medical care. Rather, he exercised his medical judgment and chose a different course of action. *Boretti* does not

11

stand for the proposition that doing so constitutes deliberate indifference.[6]

*Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700 (11th Cir. 1985) is no more persuasive. There, the Eleventh Circuit held that the "[i]ntentional failure to provide service acknowledged to be necessary is . . . deliberate indifference." *Id.* at 704. Further, the court acknowledged that when medical care is "so cursory as to amount to no treatment at all . . . in the case of serious medical problems," such actions "may violate the Fourteenth Amendment." *Id.* The record however, does not evidence that Dr. Cocoran intentionally failed to provide a necessary service. He examined Bills and found that, although the MDOC approved an angiogram procedure, it was not necessary and decided on a different procedure with follow-up. In the absence of verifying evidence that the angiogram was necessary, the Court cannot find deliberate indifference.

Finally, Bills relies on *LeMarbe v. Wisneski*, 266 F.3d 429 (6th Cir. 2001). There, the Sixth Circuit held that a doctor acted "with a conscious

---

[6] Bills also alleges that Gonzalez refuses medical care for elevated cholesterol and stage two kidney disease. (ECF No. 1, PageID.8.) While that may amount to a denial of medical care, it is unclear how that relates to the motion for immediate consideration for injunctive relief, which specifically requests the angiogram diagnostic procedure. (ECF No. 18, PageID.325.)

12

disregard" for the plaintiff's health and safety and was deliberately indifferent to a serious medical need when the doctor: (1) knew fluid in the plaintiff's stomach was bile, (2) was aware of the substantial risk of serious harm, and (3) failed to seek adequate help to stop the bile leak in a timely manner despite such knowledge. *Id.* at 439.

Here, the record does not demonstrate that the defendants consciously disregarded a serious medical need. Dr. Cocoran administered a different medical procedure after examining Bills and committed to monitoring the results. (ECF No. 19-1, PageID.350.) Dr. Cocoran explained that he would consider angiography if Bills "has a change in his ankle-brachial indices with exercise" following the examination that was administered (*id.*), but Bills did not have such a change. (*Id.* at PageID.355.) The Court cannot find on this record alone that Dr. Cocoran's assessment amounts to a conscious disregard to Bills' condition.

Accordingly, the Court **DENIES** Bills' second objection.

   **C. Amended Motion for Immediate Consideration of Motion for Injunctive Relief**

On January 6, 2026, Bills filed an amended motion for immediate consideration of motion for injunctive relief. (ECF No. 48.) The amended

13

motion puts forth the same legal arguments as his previous motion for immediate consideration for injunctive relief and stresses that, without injunctive relief, "non-compliance with [Dr. Coleman's] order [for an angiogram procedure] will continue." (*Id.* at PageID.492.)

The only medical records that Bills attaches to the amended motion that were not previously submitted and considered are kites[7] to: (1) Registered Nurse ("RN") Heaven Ghazy, dated November 21, 2023 (*Id.* at 496), and (2) RN Haley Lambright, dated May 9, 2025 and June 8, 2025 (*Id.* at 507–509.) With regard to the former, that kite pre-dated the events of this litigation and defendants' involvement. As for the latter kites, which were submitted shortly before Bills filed his motion for immediate consideration for injunctive relief, Bills "demand[ed] the MDOC approved angiogram" because "the claudication is worsening." (*Id.* at PageID.507–509.) Lambright noted that a "Chart Review was sent to the provider after [Bills'] nursing appointment on 5/12/25" and Bills "ha[s] a chronic care appointment with the Provider in the distant future" where he can "discuss [his] concerns at that time." (*Id.*) First, Lambright is not a defendant. Second, based on these submissions, the Court does not find

---

[7] A "kite" is a written message or request between prisoners and staff.

14

that there was deliberate indifference for the same reasons set forth above—there is no evidence that defendants took *no* action and there is no verifying evidence that the angiogram was medically necessary.

Since no new legal arguments were raised, the Court **DENIES** the motion for the same reasons it denies Bills' objections to the R&R and adopts the R&R's findings of fact and conclusions of law.

## IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that the Report and Recommendation dated August 14, 2025 (ECF No. 27) is **ADOPTED** as this Court's findings of fact and conclusions of law.

**IT IS FURTHER ORDERED** that Bills' motion for immediate consideration for injunctive relief (ECF No. 18) is **DENIED.**

**IT IS FURTHER ORDERED** that Bills' amended motion for immediate consideration of motion for injunctive relief is **DENIED**. (ECF No. 48.)

**IT IS FURTHER ORDERED** that Bills' motion for enlargement of time (ECF No. 53) is **DENIED AS MOOT** only to the extent that Bills requests additional time to reply to McAnally's response to Bills' Objection No. 2 to the R&R.

15

**SO ORDERED**.

                                                **s/Jonathan J.C. Grey**
                                                Jonathan J.C. Grey
Dated: January 30, 2026          United States District Judge

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 30, 2026.

**s/ S. Osorio**
Sandra Osorio
Case Manager